| | |
|---|---|
| **MANATT, PHELPS & PHILLIPS, LLP**<br>Schuyler G. Carroll<br>Russell E. Potter (admitted *pro hac vice*)<br>Thomas A. Whittington (admitted *pro hac vice*)<br>7 Times Square<br>New York, NY 10036<br>Tel: (212) 790-4500<br>Email: scarroll@manatt.com<br>        rpotter@manatt.com<br>        twhittington@manatt.com | **Hearing Date:**<br>May 14, 2025 at 10:00 A.M. (EST)<br><br>**Objection Deadline:**<br>May 7, 2025 at 5:00 P.M. (EST) |

*Counsel to the Debtor and*
*Debtor-in-Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

--------------------------------------------------------

In re:

Cold Spring Acquisition, LLC,

               Debtor.

--------------------------------------------------------

Chapter 11

Case No. 25-22002 (SHL)

**MOTION FOR ENTRY OF AN ORDER EXTENDING**
**THE DEBTOR'S EXCLUSIVE PERIODS TO FILE A**
**CHAPTER 11 PLAN AND SOLICIT ACCEPTANCES THEREOF**

Cold Spring Acquisition, LLC (the "Debtor") respectfully states the following in support of this Motion for an Entry of an Order Extending the Debtor's Exclusive Periods to File a Chapter 11 Plan and Solicit Acceptances Thereof (the "Motion"):

**PRELIMINARY STATEMENT**

1.      As the Court is aware, during the initial phase of this case, the Debtor's attention has been primarily focused on its future operations, including transition of operations to the temporary receiver. This has delayed efforts to engage in meaningful discussions towards a plan of reorganization. With the transfer to the receiver completed, the Debtor will next focus on the wind down and developing a consensual liquidating plan. The Debtor expects to engage with its

constituencies and attempt to reach consensus on the way forward in the upcoming weeks. Accordingly, the Debtor requests an extension of exclusivity.

## BACKGROUND

2.  On January 2, 2025 (the "Petition Date"), the Debtor filed a voluntary petition under chapter 11 of title 11 of the United States Code, 11 U.S.C. § 101 *et seq.* (the "Bankruptcy Code"). An examiner and official committee of unsecured creditors has been appointed.

3.  The Debtor operates a skilled nursing facility in Woodbury, New York (the "Facility") and marketed the Facility for sale after years of challenges. In September 2024, the Debtor reached an agreement with 378Sywood LLC (the "Buyer") which would appoint the Buyer as a temporary receiver pending the approval of a complete sale by the New York State Department of Health ("DOH"). The application had not yet been approved when the Debtor commenced this chapter 11 case on January 2, 2025 (the "Petition Date"). The Debtor continued to work with the DOH and the Buyer to approve the sale and transfer the facility to the Buyer.

4.  On January 13, 2025, the Debtor filed its *Motion for Order Authorizing Debtor to Enter into and Perform Agreement Providing for Appointment of Temporary Receiver* (the "Receiver Motion") [ECF No. 39] and *Debtor's Motion for an Order (I) Approving Asset Purchase Agreement and Authorizing the Private Sale of Substantially All of the Assets of the Debtor Outside the Ordinary Course of Business, (II) Authorizing Sale of Assets Free and Clear of All Liens and Interests, and (III) Granting Related Relief* (the "Sale Motion") [ECF No. 40], seeking the Court's approval to transition the operation of its facilities to the temporary receiver. The Debtor further filed the proposed order approving the Receiver Motion on January 24, 2025 and the proposed order approving the Sale Motion on January 25, 2025, hoping to expedite the transfer of the Facility and resolve any outstanding issues.

5. But after unsuccessful negotiations between the Buyer and the 1199SEIU United Healthcare Workers East (the "Union"), the Debtor changed course and on February 3, 2025 filed a *Motion for Entry of Order Approving Closure Plan* [ECF No. 119] to close the Facility. The Debtor received approval of its closure plan by the Court on February 14, 2025 and from the New York State Department of Health ("DOH") on February 19, 2025. After receiving the necessary approval, the Debtor began the closing process of its Facility.

6. In early March 2025, after the Debtor had already relocated 77 residents and terminated 150 employees, the Debtor received news of further developments – the Buyer and the Union reached an agreement that will allow the Buyer to take over as receiver and continue with the sale of the Facility. The Debtor again sought the Court's approval of the Sale and Receiver Motions. On March 20, 2025, the Court entered *Combined Order (A) Approving Appointment of 378Swyood LLC as Receiver and (B) (I) Approving Asset Purchase Agreement and Authorizing the Private Sale of Substantially All of the Assets of the Debtor Outside the Ordinary Course of Business to 378Sywood LLC, as Buyer, (II) Authorizing Sale of Assets Free and Clear of All Liens and Interests, and (III) Granting Related Relief* [ECF No. 233].

7. The Debtor worked with the Buyer and the DOH to transfer operations of the Facility to the Buyer under the receivership and on April 22, 2025 the transfer was completed. The Debtor is now able to focus on developing a consensual plan and thus, requires additional time to gather and share information needed to negotiate a plan of reorganization.

## JURISDICTION AND VENUE

8. The United States Bankruptcy Court for the Southern District of New York (the "Court") has jurisdiction over the Chapter 11 Case and this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the Southern District of New York, entered January 31, 2012. This is a core proceeding

under 28 U.S.C. § 157(b). The Debtor consents to this Court entering a final order in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

9. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

10. The statutory bases for the relief requested herein are section 1121(d) of the Bankruptcy Code, Bankruptcy Rule 9006, and Local Rule 9006-2 .

## RELIEF REQUESTED

11. Pursuant to section 1121(d) of the Bankruptcy Code, the Debtor moves for entry of an order (the "Order"), in substantially the form attached hereto as Exhibit A:

   a. Extending the period during which the Debtor has the exclusive right to file a chapter 11 plan (the "Exclusive Filing Period") by one hundred and twenty (120) days through and including September 1, 2025; and

   b. Extending the period during which the Debtor has the exclusive right to solicit acceptances thereof (the "Exclusive Solicitation Period" and together with the Exclusive Filing Period, the "Exclusive Periods") by one hundred and twenty (120) days through and including October 29, 2025.

12. Without granting the extensions sought herein, the Debtor's Exclusive Filing Period and Exclusive Solicitation Period will expire May 2, 2025 and July 1, 2025, respectively.

## BASIS FOR RELIEF

13. A debtor has the exclusive right to propose a chapter 11 plan for the first 120 days of a chapter 11 case pursuant to section 1121(b) of the Bankruptcy Code. Section 1121(c)(3) of the Bankruptcy Code extends the period of exclusivity for an additional sixty days, to an initial maximum of 180 days, where the debtor has filed a chapter 11 plan and is soliciting votes thereon.

14. Section 1121(d) of the Bankruptcy Code states that "on request of a party in interest made . . . and after notice and a hearing, the court may for cause reduce or increase the 120-day period or the 180-day period referred to in this section." The decision to extend a debtor's exclusivity periods is left to the discretion of the bankruptcy court and is fact driven. *See In re Excel Mar. Carriers Ltd.*, No. 13-23060-RDD, 2013 WL 5155040, at *2 (Bankr. S.D.N.Y. Sept. 13, 2013).

15. Although the Bankruptcy Code does not define the term "cause," courts rely on various factors to determine whether cause exists to extend a debtor's exclusivity period, including:

| | |
|---|---|
| a | The size and complexity of the case; |
| b | The necessity for sufficient time to negotiate a chapter 11 plan and prepare adequate information; |
| c | The existence of good faith progress towards reorganization; |
| d | The fact that the debtor is paying its debts as they come due; |
| e | Whether the debtor has demonstrated reasonable prospects for filing a viable plan; |
| f | Whether the debtor has made progress negotiating with debtors; |
| g | The length of time a case has been pending; |
| h | Whether the creditors are prejudiced by the extension; |
| i | Whether the debtor is seeking an extension to pressure creditors; and whether or not unresolved contingencies exist. |

*Id.* (citing *In re Adelphia Comm. Corp.*, 352 B.R. 578, 587 (Bankr. S.D.N.Y. 2006)).

16. Not all of these factors are relevant to every case, and courts use only the relevant subset of these factors to determine whether cause exists in a particular chapter 11 case. *See In re Express One Int'l Inc.*, 194 B.R. 98, 100-101 (Bankr. E.D. Tex. 1996).

17. Based on a weighing of the relevant factors, there is sufficient cause to approve the extension of the Exclusive Periods requested by the Debtor based on the following:

    a    The Debtor's efforts in the initial phase of this case have focused on the receivership and the sale of its nursing facility to the Buyer, thereby transferring all operations of the Facility and operating and capital expenses to the Buyer. The Debtor sought approval from the Court to proceed and received only an objection by the Union. The sale and receivership were to move forward.

    b    However, in early February 2025, the Buyer indicated it would not proceed with the sale or take over as temporary receiver until negotiations with the Union were resolved. Negotiations between the Buyer and the Union stalled, forcing the Debtor to seek permission from the Court and the DOH to close the Facility to mitigate operational losses. After receiving approval, the Debtor began the closing process of its Facility.

    c    The opportunity for sale reemerged in mid-March 2025, when the Buyer and the Union reached an agreement on a modified collective bargaining agreement that would allow for the sale of the Facility to Buyer and the Buyer's immediate take over as temporary receiver.

    d    Those efforts finally culminated with the take over the facility on April 22, 2025.

    e    Since the Petition Date, the Debtor has continued to pay substantially all of its undisputed, post-petition expenses and invoices in the ordinary course of business or as otherwise provided by order of the Court.

    f    The Debtor is not seeking an extension of the Exclusive Periods to pressure or prejudice any of its stakeholders. Rather, the Debtor is seeking an extension of the Exclusive Period to secure adequate time to develop a plan of reorganization.

    g    There has been no prior extension of the Exclusive Periods, and this request comes less than four months after the Petition Date.

18. The relevant factors described above support the Debtor's requested extension of the Exclusive Periods. Extending the Exclusive Periods by one hundred and twenty (120) days will ensure that the Debtor and its creditors are able to capitalize on the progress it has made to date in this matter. Further, the requested extension is within the range of similar relief granted by courts under similar circumstances. *See, e.g., In re Swatara Coal Co.*, 49 B.R. 898, 900

(Bankr. E.D. Penn. 1985) (granting a 150-day initial extension of the debtor's exclusivity periods where there was a change of debtor's ownership).

19. In *Swatara*, the Court granted an extension because ownership and control of the debtor changed three months after the case was filed. The Court determined that cause existed for an extension and stated: "We agree with the debtor that this nearly three months of the exclusivity period was, in effect, wasted, and should not be counted against the debtor." Similarly here, because of the efforts to address future operations and to obtain approval of the temporary receiver and ultimately, to transfer ownership, the Debtor has been unable to address a plan during the initial period of this chapter 11 case. Accordingly, cause exists for the requested extension of exclusivity.

## NOTICE

20. Notice of this Motion will be provided to: (i) the United States Trustee; (ii) those persons who have formally appeared and requested notice and service in this case pursuant to Bankruptcy Rules 2002 and 3017; (iii) the New York State Attorney General; (iv) the New York State Department of Health; and (v) counsel to the official committee of unsecured creditors.

## NO PRIOR REQUEST

21. No prior request for the relief sought in this Motion has been made to this or any other court in connection with this chapter 11 case, and the Debtor respectfully requests entry of the annexed order.

## CONCLUSION

**WHERFORE**, the Debtor respectfully requests that the Court grant this motion along with such other and further relief as may be appropriate.

Dated: April 24, 2025
New York, New York

**MANATT, PHELPS & PHILLIPS, LLP**

*/s/  Schuyler G. Carroll*
Schuyler G. Carroll
Russell E. Potter (admitted *pro hac vice*)
Thomas A. Whittington (admitted *pro hac vice*)
7 Times Square
New York, NY 10036
Tel: (212) 790-4500
scarroll@manatt.com
rpotter@manatt.com
twhittington@manatt.com

*Counsel to the Debtor and
Debtor-in-Possession*

## **EXHIBIT A**

PROPOSED ORDER

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------X

In re:

Cold Spring Acquisition, LLC,[1]

        Debtor.

Chapter 11

Case No. 25-22002 (SHL)

------------------------------------------------------X

## ORDER GRANTING MOTION FOR ENTRY OF AN ORDER EXTENDING THE DEBTOR'S EXCLUSIVE PERIODS TO FILE A CHAPTER 11 PLAN AND SOLICIT ACCEPTANCES THEREOF

This Court has considered the *Motion for Entry of an Order Extending the Debtor's Exclusive Periods to File a Chapter 11 Plan and Solicit Acceptances Thereof* (the "Motion"), the statements of counsel and the evidence adduced with respect to the Motion at a hearing before this Court (the "Hearing").[2] The Court has found that (i) this Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; (ii) this is a core proceeding pursuant to 28 U.S.C. § 157(b); (iii) venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409; (iv) sufficient cause exists within the meaning of section 1121(d) of the Bankruptcy Code to extend the Exclusive Periods; and (v) notice of the Motion and the Hearing was sufficient under the circumstances. After due deliberation, this Court has determined that the relief requested in the Motion is in the best interests of the Debtor, its estate and its creditors, and upon good and sufficient cause having been shown therefore;

**IT IS HEREBY ORDERED THAT:**

    1.    The Motion is GRANTED as set forth herein.

---

[1] The Debtor in this Chapter 11 case, along with the last four digits of the Debtor's federal tax identification number, is: Cold Spring Acquisition, LLC (4415).

[2] Capitalized terms not otherwise defined herein shall have the meanings given to them in the Motion.

2. The Exclusive Filing Period is extended through and including September 1, 2025 pursuant to section 1121(d) of the Bankruptcy Code.

3. The Exclusive Solicitation Period is extended through and including October 29, 2025, pursuant to section 1121(d) of the Bankruptcy Code.

4. The relief granted in this Order is without prejudice to the Debtor's right to seek further extension of the Exclusive Periods.

5. This Court shall retain jurisdiction to hear and determine all matters arising from or related to the interpretation, implementation, and/or enforcement of this Order.

Dated: April ___, 2025
 New York, New York

_____
THE HONORABLE SEAN H. LANE
UNITED STATES BANKRUPTCY JUDGE