Hearing Date: June 10, 2025 at 11:00 a.m.

**GARFUNKEL WILD, P.C.**
111 Great Neck Road
Great Neck, New York 11021
Telephone: (516) 393-2200
Facsimile: (516) 466-5964
Adam T. Berkowitz, Esq.

*Special Counsel to the Debtor
and Debtor-in-Possession*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------x

In re:

COLD SPRING ACQUISITION, LLC,[1]

                  Debtor.

-----------------------------------------------------------x

Chapter 11

Case No. 25-22002 (SHL)

**COVER SHEET TO FIRST INTERIM FIRST INTERIM FEE APPLICATION OF
GARFUNKEL WILD, P.C. FOR ALLOWANCE OF COMPENSATION
AND REIMBURSEMENT OF EXPENSES AS SPECIAL COUNSEL
TO THE DEBTOR FOR THE PERIOD FROM
JANUARY 2, 2025 THROUGH AND INCLUDING APRIL 30, 2025**

| | |
|---|---|
| Name of Applicant: | Garfunkel Wild, P.C. |
| Role in Case: | Special Counsel to the Debtor |
| Date of Retention: | April 23, 2025, effective as of January 2, 2025[2] |
| Period for Which Compensation and Reimbursement of Expenses is Sought: | January 2, 2025 through and including April 30, 2025 |
| Amount of Compensation Sought as Actual, Reasonable and Necessary: | $262,846.50 |
| Amount of Expense Reimbursement Sought as Actual, Reasonable and Necessary: | $0.00 |

---

[1] The last four digits of the Debtor's federal tax identification number are 4415.

[2] The Bankruptcy Court approved Garfunkel Wild's retention as Special Counsel on the record of the April 23, 2025 hearing. A form of Order reflecting such approval has been submitted to the U.S. Trustee's office for review and will thereafter be submitted to the Court for entry.

4925-2134-8669v.1

| | |
|---|---|
| Blended Rate for All Timekeepers (Excluding Paraprofessionals): | $705.82 |
| Total Compensation Previously Requested: | $0.00 |
| Total Compensation Previously Awarded: | $0.00 |
| Total Expense Reimbursement Previously Requested: | $0.00 |
| Total Expense Reimbursement Previously Awarded: | $0.00 |

| Name: | Position: | Year Admitted to Practice: | Hours: | Hourly Rate: | Total Fees Sought for Period: |
|---|---|---|---|---|---|
| Judith A. Eisen | Partner/Director | 1987 | 206.8 | $730.00 | $150,964.00 |
| Adam T. Berkowitz | Partner/Director | 2004 | 52.9 | $685.00 | $36,236.50 |
| Andrew J. Schulson | Partner/Director | 1998 | 48.7 | $710.00 | $34,577.00 |
| Robert A. Del Giorno | Partner/Director | 2003 | 2.5 | $675.00 | $1,687.50 |
| Sean P. Leyden | Partner/Director | 1996 | 1.3 | $695.00 | $903.50 |
| Burton S. Weston | Of Counsel | 1977 | 6.5 | $700.00 | $4,550.00 |
| John G. Martin | Of Counsel | 1985 | 1.5 | $700.00 | $1,050.00 |
| Barbara D. Knothe | Partner | 1985 | 43.3 | $680.00 | $29,444.00 |
| Marc A. Sittenreich | Partner | 2012 | 0.3 | $540.00 | $162.00 |
| Andrew Z. Ko | Senior Attorney | 2018 | 0.5 | $470.00 | $235.00 |
| Michelle G. Scanlon | Associate | 2023 | 7.1 | $370.00 | $2,627.00 |
| Colleen R. Pierson | Associate | 2021 | 1.0 | $410.00 | $410.00 |

**Hearing Date: June 10, 2025 at 11:00 a.m.**

**GARFUNKEL WILD, P.C.**
111 Great Neck Road
Great Neck, New York 11021
Telephone: (516) 393-2200
Facsimile: (516) 466-5964
Adam T. Berkowitz, Esq.

*Special Counsel to the Debtor
and Debtor-in-Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x

In re:

COLD SPRING ACQUISITION, LLC,[3]

               Debtor.

------------------------------------------------------------x

Chapter 11

Case No. 25-22002 (SHL)

**FIRST INTERIM FEE APPLICATION OF GARFUNKEL WILD, P.C. FOR
ALLOWANCE OF COMPENSATION AND REIMBURSEMENT OF EXPENSES
AS SPECIAL COUNSEL TO THE DEBTOR FOR THE PERIOD FROM
JANUARY 2, 2025 THROUGH AND INCLUDING APRIL 30, 2025**

Garfunkel Wild, P.C. (the "**Applicant**" or "**GW**"), as special counsel to Cold Spring Acquisition, LLC (the "**Debtor**"), as debtor and debtor-in-possession in this chapter 11 case (the "**Chapter 11 Case**"), respectfully submits this application (the or this "**Application**") pursuant to section 330 of Title 11 of the United States Code (the "**Bankruptcy Code**"), Rule 2016(a) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rule 2016-1 of the Local Rules of this Court (the "**Local Rules**"), for its first interim allowance of compensation and reimbursement of expenses actually, necessarily, and reasonably incurred in connection with this Chapter 11 Case, and respectfully represents as follows:

---

[3] The last four digits of the Debtor's federal tax identification number are 4415.

**JURISDICTION AND VENUE**

1. This Court has jurisdiction over this Application pursuant to 28 U.S.C. §§ 157 and 1334. Venue of this case and this Application in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief sought herein are section 330 of the Bankruptcy Code, Bankruptcy Rule 2016(a), and Local Rule 2016-1.

**CASE BACKGROUND**

2. On January 2, 2025 (the "**Petition Date**"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

3. The Debtor remains in possession of its assets and operations and continues to manage its business as a debtor-in-possession pursuant to section 1107 and 1108 of the Bankruptcy Code.

4. On January 23, 2025, the United States Trustee filed its *Notice of the Appointment of an Official Committee of Unsecured Creditors* in this Chapter 11 Case (the "**Committee**") [**ECF 73**].

5. On February 21, 2025, the Court entered an Order appointing Leslie A. Berkoff as Examiner (the "**Examiner**") in this Chapter 11 Case [**ECF 167**].

6. The factual background regarding the Debtor, including its current and historical business operations and the factors which precipitated the filing of the Debtor's Chapter 11 Case, are set forth in detail in the *Declaration of Martin A. Cauz in Support of Debtor's Chapter 11 Petition and First Day Motions* (the "**Cauz Declaration**")[4] [**ECF 2**]. In the interest of brevity, the facts and statements set forth in the Cauz Declaration are incorporated herein by reference.

---

[4] Capitalized terms used herein but not defined shall have the meanings ascribed to them in the Cauz Declaration.

4925-2134-8669v.1

7. On the record of the April 23, 2025 hearing, after the United States Trustee indicated they have no objection to GW's retention as Special Healthcare Counsel to the Debtor, the Court approved such retention. A form of Order reflecting such approval has been submitted to the U.S. Trustee's office for review and will thereafter be submitted to the Court for entry.

8. A plan and disclosure statement have not yet been filed in this Chapter 11 Case.

## SUMMARY OF RELIEF REQUESTED

9. By this Application, GW is seeking allowance of interim compensation of $262,846.50 for professional services rendered to the Debtor as special counsel to the Debtor for the period from the Petition Date through and including April 30, 2025 (the "**First Fee Period**"), as well as reimbursement of expenses incurred in connection therewith in the aggregate amount of $0.00 through such date. During the First Fee Period, GW's attorneys and paraprofessionals expended a total of 372.4 hours, which represents a blended hourly rate (excluding paraprofessionals) of approximately $705.82.[5]

10. During the First Fee Period GW provided the Debtor with counsel related to general healthcare, regulatory, transactional, and general corporate matters, including in connection with the Debtor's proposed sale and previously contemplated closure plan. The tasks GW assisted the Debtor with during the First Fee Period include:

- Assisting the Debtor with the day-to-day healthcare, regulatory, litigation, and corporate matters as they arose in connection with the continued operations of Debtor's Senior Care Facility;

- Assisting the Debtor with various healthcare, regulatory and related issues in connection with the proposed transaction, which ultimately resulted in the successful appointment of a temporary receiver and the transfer of operations for the Senior Care Facility;

---

[5] To the extent that charges for services rendered or expenses incurred relating to the First Fee Period were not processed prior to the preparation of this Application, GW reserves the right to request reimbursement for compensation for such services or reimbursement for such expenses in any future application.

3

- Assisting the Debtor with both obtaining approval of a closure plan with respect to the Senior Care Facility, when it appeared that closure was the Debtor's only option, and then working with the Department of Health to rescind that plan when a path was forged to allow the Senior Care Facility to be transferred as a going concern; and

- Regularly interfacing with the New York State Department of Health and other regulatory bodies to help facilitate the foregoing.

11. GW continues to assist the Debtor with healthcare, regulatory, transactional, litigation, and corporate matters as they arise. Ultimately, such efforts support integral components of the Debtor's overall goals leading up to the successful transition of the Senior Care Facility and the ultimate consummation of its Chapter 11 Case. Accordingly, and as set forth in further detail below, GW has provided significant benefits to the Debtor in this Chapter 11 Case.

**COMPLIANCE WITH COURT AND UST GUIDELINES GOVERNING APPLICATIONS FOR COMPENSATION AND REIMBURSEMENT OF EXPENSES**

12. This Application has been prepared in accordance with the *Amended Guidelines for Fees and Disbursements for Professionals in Southern District of New York Bankruptcy Cases (General Order M-447)*, adopted by the Court on January 29, 2013, effective as of February 5, 2013 (the "**Local Guidelines**") and the *United States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330* adopted on January 30, 1996 (the "**UST Guidelines**" and together with the Local Guidelines, collectively, the "**Guidelines**").

13. In accordance with the Guidelines, the following are annexed hereto:

- **Cover Sheet:** A cover sheet containing a summary of: (i) total compensation and reimbursement of expenses requested by this Application and that have been previously requested; (ii) total compensation and reimbursement of expenses previously awarded; (iii) a blended hourly rate for the compensation requested by this Application; and (iv) a schedule setting forth: (A) all professionals and paraprofessionals who performed services in this Chapter 11 Case during the First Fee Period; (B) the capacity in which each such individual is employed; (C) the

4

hourly billing rate charged for services performed by each such individual; (D) the aggregate number of hours expended and fees billed therefore by each such individual; and, (E) with respect to attorneys, the year in which each such individual was first licensed to practice law.

- **Exhibit A:** A certification regarding compliance with the Guidelines.

- **Exhibit B:** A schedule showing: (i) the fees requested and hours billed for each project category applicable to the First Fee Period; (ii) the categories of actual and necessary expenses for which GW is seeking reimbursement by this Application; and (iii) the total amount of actual and necessary expense reimbursement for each such category.

- **Exhibit C:** Copies of GW's time records for the First Fee Period.

## BACKGROUND OF APPLICANT

14. GW is a prominent healthcare firm that was formed in 1980 and has long provided legal services to healthcare, social services, and related industries. GW has significant expertise and knowledge in the fields of for-profit and not-for-profit healthcare and social services, debtors' and creditors' rights, debt restructuring and corporate reorganizations, corporate, finance, tax law, real estate matters, and commercial litigation, among other areas. GW's attorneys are well recognized for their expertise, are widely published, teach and otherwise actively speak to professionals and other industry related groups.

15. In addition to GW's general expertise, GW has represented the Debtor since 2020, providing a broad array of legal services including in the fields of healthcare, regulatory, corporate, transactional, and litigation related work. As a result, GW is intimately familiar with the Debtor's business and financial affairs and the circumstances surrounding the Debtor's Chapter 11 Case.

16. Moreover, in the period leading up to the Petition Date, GW was actively involved in the negotiation of a proposed transaction for the transition of the operations of the Senior Care Facility, which negotiations including both the potential purchaser and the New York State Department of Health.

5

17. Due to the focused nature of GW's practice and the expertise of its attorneys, GW has been able to provide high quality legal services to the Debtor in a cost efficient manner. GW's rates during the First Fee Period ranged from $540 to $740 per hour for partner-directors, partners, and of counsel, $410 to $470 for associates and senior attorneys.

**SUMMARY OF SERVICES RENDERED**

18. During the First Fee Period, GW was involved in healthcare, regulatory, corporate, and litigation matters. The Debtor's path in this Chapter 11 Case was far from clear at the outset, and the Debtor alternated between pursuing a transaction for the transfer of its healthcare operations as a going concern, pursuing a plan of closure when it appeared the transaction would not move forward and then transitioning back to the pursuit of a transaction. GW spent the bulk of its time advising and assisting the Debtor with the various healthcare related regulatory and related issues that arose in connection with the pursuit of these two alternating endeavors as well as interfacing directly with those regulators. GW's expertise and guidance allowed the Debtor to obtain approval, on an expedited basis, of a plan of closure allowing for the safe cessation of operations and the transfer of the Debtor's residents. When a deal was reached to resurrect the Debtor's proposed sale, GW assisted the Debtor in simultaneously rescinding the plan of closure and, at the same time, obtaining regulatory approval for the appointment of a temporary receiver to take control of the Debtor's healthcare operations. GW continues to assist the Debtor with the regulatory process as it moves towards the permanent transfer of its assets and operations. Throughout that process, GW also assisted the Debtor with the numerous day-to-day healthcare related legal and regulatory issues as they arose.

19. GW does not wish to unnecessarily burden this Court with an overly detailed recitation of each matter with respect to which it rendered services during the First Fee Period. The

6

professionals and paraprofessionals of GW maintained daily detailed records of their time contemporaneously with the rendition of professional services, as set forth on the complete copies of such records annexed as **Exhibit C** hereto. To the fullest extent possible, the details of such professional services rendered by a GW professional were set forth in such time records. To provide the Court with an orderly synopsis of the services rendered on behalf of the Debtor, and in accordance with the Guidelines, GW established the following separate billing categories organized by subject matter:

- Post-Petition General Healthcare            (0021)
- Post-Petition 2023 Proposed Transaction     (0022)
- Post-Petition Plan of Closure               (0023)
- Post-Petition Litigation                    (0024)
- Post-Petition Retention and Fee Applications (0025)

20.    The summary set forth herein does not include a comprehensive description of all of the services rendered by GW in this Chapter 11 Case. Rather, the discussion highlights and focuses upon those matters on which GW spent a significant amount of time during the First Fee Period. A detailed description of the work performed by GW and the time expended performing such services is fully set forth in GW's time records.

A.    **Post-Petition Case General Healthcare**

21.    Prior to the commencement of this Chapter 11 Case, GW was regularly called upon to assist the Senior Care Facility with numerous day-to-day healthcare issues as they arose. These ranged from addressing resident care issues to interfacing with Medicare and Medicaid to address reimbursement issues to working more generally with the Senior Care Facility to ensure general compliance with the complex regulatory framework which the facility operates in.

7

4925-2134-8669v.1

22. Upon the commencement of this Chapter 11 Case, these day-to-day healthcare and regulatory issues persisted but compliance was made more complicated with the additional overlay of the bankruptcy code's requirements. GW continued to advise and assist the Debtor with issues related to licensing, patient care obligations, and governmental health agencies in real time as they arose. In addition, as the Debtor relies heavily on government reimbursement for cash flow, GW worked with the Debtor to address certain government reimbursement issues related to certain "lag" time payments from government payors to help facilitate prompt reimbursements and alleviate cash flow concerns as well as various licensure issues.

B. **Post-Petition 2023 Proposed Transaction**

23. Prior to the commencement of this Chapter 11 Case, GW worked closely with the Debtor with the marketing and proposed sale of the Senior Care Facility – a complex transaction that involves numerous regulatory issues including the proposed appointment of a temporary receiver for the facility, and multiple governmental approvals for the actual transfer of the operations. Upon the commencement of this case, GW worked closely with Debtor, its Bankruptcy Counsel, the NYS Department of Health and other parties to try and keep that process on track. GW offered numerous affidavits and related testimony to inform the Court and other parties in interest of the history of the transaction and the healthcare regulatory overlay to the Chapter 11 process. GW regularly interfaced with the Department of Health to facilitate the transaction and work through regulatory issues and obstacles as they arose. While the transaction process was temporarily derailed when it appeared that closure was the only path forward, the parties worked tirelessly to resurrect the going concern transaction. With the possibility of preserving the Debtor's operations for the benefit of all parties, including the Debtor's residents, employees and other constituents, GW assisted the Debtor in navigating the NYS process. Ultimately, these endeavors

8

allowed for the successful appointment of a temporary receiver and a transfer of operations to the receiver. GW continues to work with the Debtor and other parties in interest to achieve a successful permanent transfer of the Debtor's healthcare operations.

**C.    Post-Petition Plan of Closure**

24.    As noted above, the Debtor's path in this Chapter 11 Case was anything but certain. When it appeared that closure was the Debtor's only path forward, GW immediately began working with Debtor, the NYS Department of Health and other parties in interest to facilitate approval of a plan of closure that balanced the Debtor's limited financial resources with its duty to ensure patient care and safety. GW's efforts resulted in approval of a closure plan that balanced the Debtor's concerns and would allow for the safe cessation of operations. GW also assisted the Debtor in understanding and complying with its obligations as it began implementing that plan.

25.    Before the Senior Care Facility was closed, however, the possibility of saving the facility reemerged. GW immediately set to work, interfacing with the Department of Health and others, to rescind the closure plan and begin repopulating the facility. GW's efforts ultimately resulted in the successful rescission of the closure plan, an integral component necessary to permit the going concern transaction to move forward.

**D.    Post-Petition Litigation**

26.    Prior to the commencement of this Chapter 11 Case, the Debtor was involved in complex litigation with parties including the New York State Attorney General. GW assisted with the Debtor's pre-petition representation in those matters. Upon the commencement of this Chapter 11 Case, GW capitalized on its prior knowledge and continued to assist with discreet issues as they arose in connection with the New York State Attorney General's action. GW also assisted the Debtor in connection with other investigations and related matters.

9

**E.**     **Post-Petition Retention and Fee Application**

27.    This matter covers time spent by GW in connection with its retention as special counsel in the Debtor's Chapter 11 Case and its fee applications in connection therewith. For the First Fee Period the time spent by GW relates solely to its retention in the Debtor's Chapter 11 Case.

28.    As noted, GW represented the Debtor and certain related parties prior to the commencement of this Chapter 11 Case. GW spent time preparing for the initial application for its retention. Upon filing, the Office of the United States Trustee raised certain concerns related to GW's prior representation of certain related parties as well as with a separate arrangement with a third party to address GW's outstanding pre-petition fees. GW worked with the Office of the United States Trustee to address those concerns. That process included, among other things, running supplemental conflict searches, making additional disclosures, preparing and filing a supplemental declaration and obtaining a "Lar Dan" declaration from a third party related to the pre-petition fee arrangement. Ultimately, GW satisfied the concerns of the United States Trustee who in late April expressed that their office had no objection to GW's retention as special counsel.

## BASIS FOR RELIEF REQUESTED

29.    Section 330 of the Bankruptcy Code governs compensation of professionals in a bankruptcy case and provides that, when determining the amount of reasonable compensation to award to a professional, the Court should consider the nature, extent, and value of the services to the bankrupt estate and all other relevant factors, including the following:

- the time spent on such services;
- the rates charged for such services;

10

- whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of [the Debtor's bankruptcy case];

- whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;

- with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and
- whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title

11 U.S.C. § 330(a)(3).

30. The congressional policy expressed in section 330 of the Bankruptcy Code provides for adequate compensation in order to continue to attract qualified and competent professionals to bankruptcy cases. *In re Drexel Burnham Lambert Grp., Inc.*, 133 B.R. 13, 20 (Bankr. S.D.N.Y. 1991) ("Congress' objective in requiring that the market, not the Court, establish attorneys' rates was to ensure that bankruptcy cases were staffed by appropriate legal specialists.") (citations and internal quotations omitted); *In re Busy Beaver Bldg. Ctrs., Inc.*, 19 F.3d 833, 850 (3d Cir. 1994) ("Congress rather clearly intended to provide sufficient economic incentive to lure competent bankruptcy specialists to practice in the bankruptcy courts.") (citations and internal quotations omitted).

31. Section 330 of the Bankruptcy Code provides that compensation awarded to professionals must be both necessary and reasonable. *In re Keene Corp.,* 205 B.R. 690, 696 (Bankr. S.D.N.Y. 1997). The test for determining necessity "is objective, focusing upon what services a reasonable lawyer would have performed under the circumstances." *In re Angelika Films 57th, Inc.*, 227 B.R. 29, 42 (Bankr. S.D.N.Y. 1998) (citations omitted). This test "does not rely on perfect hindsight" to determine the ultimate success or failure of the attorney's actions. *Id*. (citations omitted). *See also*, *Keene*, 205 B.R. at 696. Ultimately, "if the services of a debtor's attorney are

11

reasonably likely to benefit the debtor's estate, they should be compensable." *Angelika Films*, 227 B.R. at 42 (citations and internal quotations omitted).

32.  GW believes the professional services performed by it during the First Fee Period were necessary and appropriate for the ultimate successful consummation of the Debtor's Chapter 11 Case. The professional services performed by GW were in the best interests of the Debtor, its estate, and parties in interest. The compensation requested for the foregoing services is commensurate with the complexity and the importance in nature of the problems, issues and tasks involved. Additionally, all of the services were rendered in an expeditious and efficient manner, with the use of appropriate staffing for each assignment so as to minimize the costs to the Debtor.

33.  GW's rates for professionals are reasonable and consistent with those charged by other similar firms. The fees charged herein are consistent with the market rate for comparable services. Accordingly, GW submits that pursuant to the applicable criteria for chapter 11 cases, and based upon the factors considered pursuant to Section 330 of the Bankruptcy Code, Bankruptcy Rule 2016, Local Rule 2016-1, and the Guidelines, as well as the results that have been achieved thus far in this Chapter 11 Case, the compensation requested by GW is justified.

34.  With respect to reimbursement of expenses, GW's regular practice is to charge its clients in all areas of practice for identifiable, non-overhead disbursements incurred in connection with such client's case that would not have incurred absent GW's representation of such client. Moreover, GW does not make a profit on any reimbursable service, whether such service is performed by GW in-house or through a third party. For the First Fee Period, GW is seeking reimbursement of $0.00.

35.  GW has, and will continue to work to anticipate and respond to the Debtor's needs. The services performed by GW during the First Fee Period were both essential and beneficial to

12

the Debtor's estate and were consistently performed in a timely manner commensurate with the complexity, importance, and highly regulated nature of the issues involved. GW submits that the compensation and expense reimbursement requested hereby are reasonable and warranted in light of the nature, extent, and value of such services to the Debtor, its estate, and all parties in interest. Accordingly, GW respectfully requests that the Court enter an order granting the relief requested hereby.

## **NOTICE**

36. Notice of this Application shall be provided to: (a) the Office of the United States Trustee for the Southern District of New York; (b) the Debtor's creditors; and (c) any party that has filed a notice of appearance and request for service of documents. GW submits that no other or further notice of this Application need be given.

## **NO PRIOR REQUEST**

37. No previous request for the relief sought herein has been made to this or any other court.

13

**WHEREFORE**, the Applicant respectfully requests that the Court enter an order, substantially in the form annexed hereto as **Exhibit D**, allowing compensation for GW for the First Fee Period in the amount of $262,846.50 and reimbursement of expenses in the amount of $0.00 for such period.

Dated:    Great Neck, New York
           May 15, 2025

           **GARFUNKEL WILD, P.C.**

           By: /s/ Adam T. Berkowitz
           Adam T. Berkowitz, Esq.
           111 Great Neck Road
           Great Neck, New York 11021
           Telephone: (516) 393-2200
           Facsimile: (516) 466-5964

           *Special Counsel to the Debtor*
           *and Debtor-in-Possession*