**RIMON P.C.**
Counsel to the Official Committee
of Unsecured Creditors
100 Jericho Quadrangle, Suite 300
Jericho, New York 11753
(516) 479-6300
Ronald J. Friedman
Brian Powers
Haley Trust

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------x

In re:                                                                                  Chapter 11

COLD SPRING ACQUISITION, LLC.,                              Case No.: 25-22002 (SHL)
d/b/a COLD SPRING HILLS CENTER
FOR NURSING & REHABILITATION,

                                                     Debtor.

------------------------------------------------------------------x

## APPLICATION FOR ENTRY OF
## AN ORDER DIRECTING EXAMINATION OF
## BENT PHILIPSON, A PERSON WITH KNOWLEDGE OF THE DEBTOR'S
## BUSINESS TRANSACTIONS AND PRODUCTION OF DOCUMENTS PURSUANT
## TO RULE 2004 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE

**To:**   **Honorable Sean H. Lane**
          **United States Bankruptcy Judge**

The Official Committee of Unsecured Creditors (the "Committee") of Cold Spring Acquisition, LLC d/b/a Cold Spring Hills Center for Nursing and Rehabilitation (the "Debtor"), by its counsel, Rimon P.C., hereby submits this application (this "Application") seeking entry of an order, copy of which is annexed hereto as **Exhibit A** proposed order (the "Proposed Order"), pursuant to section 105(a) of title 11, United States Code (the "Bankruptcy Code") and Rule 2004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rule(s)") authorizing the issuance and service of subpoenas *duces tecum* and/or subpoenas *ad testificandum,* for the production of documents from, and/or examination of Bent Philipson (the "Witness"), a person with knowledge of the Debtor's business transactions, and the production and turnover by the Witness of all

documents and information requested as set forth in the schedule annexed hereto as **Exhibit B**, and respectfully sets forth and represents as follows:

## BACKGROUND

### The Bankruptcy

1. On January 2, 2025 (the "Petition Date"), the Debtor commenced this case (the "Bankruptcy Case") by filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court").

2. On January 23, 2025, the Office of the United States Trustee (the "US Trustee") filed a *Notice of Appointment of Creditors' Committee* (ECF Doc. No. 73) appointing 1199 SEIU Benefit and Pension Funds, Reliable Health Systems, LLC and Five Star Staffing, Inc. to the Committee.

3. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A) and (O).

### The Debtor's Business and Assets

4. The Debtor is a limited liability company formed in July 2014 which operated a skilled nursing and rehabilitation center in Woodbury, New York (the "Senior Care Facility"). The Senior Care Facility provides long-term care and rehabilitative services such as hospice, dementia care, medical needs, as well as short- and long-term rehabilitation care. The Senior Care Facility also operates a senior day program. As of the Petition Date, the Senior Care Facility had 588 beds and employed approximately 500 people. In 2023 the Senior Care Facility had approximately $75.5 million of annual gross revenue.

**Appointment of the Examiner**

5.  On January 16, 2025, the US Trustee filed its *Motion Pursuant to 11 U.S.C. § 1104 For An Order Directing the Appointment of a Chapter 11 Trustee* (ECF Doc. No. 59). Thereafter, the Debtor and the US Trustee entered into a stipulation resolving the US Trustee's motion and appointing an examiner (ECF Doc. No. 74). The US Trustee appointed Leslie A. Berkoff, Esq., as the examiner (the "Examiner"), charged with the obligation to investigate any pre-petition causes of action with respect to: (a) the facts and circumstances underlying and leading to the filing of this chapter 11 case; and (b) all aspects of the Debtor's financial condition, including without limitation, (i) all leases and agreements, loans, vendor agreements, insurance agreements and trusts, federal and state agency agreements administering Medicare and Medicaid benefits, collective bargaining agreements, and (ii) the conduct of the Debtor, its owners and affiliates, without limitation to include Cold Spring Realty, LLC, the DIP Lender, and Graph MGA LLC and all "Graph" entities (including current and former members, owners, managers, and their respective professionals) in connection therewith and all aspects of the ownership and operations of the Debtor (the "Examiner Investigation"); and (c) otherwise perform the duties of an examiner set forth in Bankruptcy Code § 1106(a)(4).

**The Debtor's Prepetition Litigation with New York State**

6.  On December 16, 2022, the New York State Office of the Attorney General filed a Verified Petition (the "AG's Complaint") in the Supreme Court of the State of New York County of Nassau against the Debtor and twenty-seven other respondents at Index No. 617709/2022 (the "State Court Action").

7.  The AG's Complaint sets forth allegations of rampant fraud, financial loss to the taxpayer-funded New York Medicaid and federal Medicare programs, and repeated and persistent

violation of laws designed to protect vulnerable people who live in New York nursing homes. The AG's Complaint further highlights its findings of resident neglect, harm and suffering, and the persistent fraud and illegality of the Debtor and its insiders' operations of the Senior Care Facility.

8.  The AG's Complaint sought "restitution, disgorgement, and injunctive relief to expose and stop the repeated and persistent fraud and illegality by the Debtor and others, including (1) repeated neglect and inhumane treatment of the Debtor's residents who have suffered while in the Debtor's charge and (2) a long history of insufficient staffing and poor quality of care that began well before the COVID-19 pandemic, in violation of and in reckless disregard of numerous New York State and federal laws, rules, and regulations." *See* AG's Complaint, ¶3.

9.  Further, the AG's Complaint highlights that its allegations of egregious conduct of the Debtor and its insiders are directly traceable to their unconscionable fraudulent conversion of many millions of dollars in "up-front profit"[1] taken from the Debtor. The AG's Complaint also alleges the Debtor and its insiders further enriched themselves by flagrantly disregarding their legal and fiduciary duties, and diverted, through related-party transactions, over $22.6 million from the Debtor. The AG's Complaint elucidates an intricate web of the Debtor, its insiders, and its affiliates, and how they were able to exercise control over the Debtor's facility and to orchestrate multiple deceptive schemes to extract funds for their personal financial benefit. For example, the AG's Complaint illustrated three primary fraudulent schemes through which the Debtor and other respondents illegal converted over $22.6 million in Medicaid and Medicare funds from Cold Spring Hills from 2016 through 2021, including: (1) their fraudulent rent scheme

---

[1] As set forth in the AG's Complaint, "up-front profit" refers to the practice of making payments from the nursing home to the Debtor and other respondents under the guise of pre-determined and self-negotiated "expenses" and other transfers of funds, as a priority over, and without regard to, ensuring that the nursing home has used the public funds it received to meet the nursing home's duty to provide required care, with sufficient staffing to render such care, to its residents.

through Cold Spring Realty Acquisition, LLC; (2) their fraudulent promissory note scheme through Lending Partners, LLC; and (3) their fraudulent management/consulting company scheme through Ventura, Highview Management, Inc. and Roswell Associates, LLC.[2]

10. During the pendency of the chapter 11 case, the Committee and the Examiner have each been conducting investigations into the significant allegations made by the New York State Office of the Attorney General as set forth in the AG's Complaint (together, the "Insider Investigations"). That investigation remains ongoing,[3] but the Committee believes that, if the allegations are true, there will be substantial claims of the estate against the Debtor's insiders and other third parties that should be prosecuted for the benefit of creditors (the "Estate Claims").

## THE RELIEF REQUESTED

11. Federal Rule of Bankruptcy Procedure 2004 provides that "[o]n motion of any party in interest, the Court may order the examination of any entity" with regard to the "acts, conduct, or property or to the liabilities and financial condition of the debtors, or to any matter which may affect the administration of the debtors' estate..." Fed. R. Bankr. P. 2004(b). The "purpose of a [Bankruptcy] Rule 2004 examination is to assist a party in interest in determining the nature and extent of the bankruptcy estate, revealing assets, examining transactions and assessing whether wrongdoing has occurred. *In re Recoton Corp.*, 307 B.R. 751, 755 (Bankr. S.D.N.Y. 2004) (citing *In re Bennet Funding Group, Inc.*, 203 B.R. 24, 28 (Bankr. N.D.N.Y. 1996). An official committee of unsecured creditors is expressly authorized to investigate the acts, conduct, assets, liabilities and financial condition of the Debtors under Bankruptcy Code § 1103. *In re Recoton Corp.*, 307

---

[2] These schemes only depict a fraction of the allegations raised against the Debtor and other respondents included in the State Court Action.

[3] The Examiner recently filed a request that the Court extend her time to complete her report through and including January 31, 2026.

B.R. at 755 (citing *In re Bush Terminal Co.*, 102 F.2d 471 (2d Cir. 1939); *In re Hilsen*, No. 87-11261 (JMP), 2008 Bankr. LEXIS 2123, at *11-12 (Bankr. S.D.N.Y. July 25, 2008) ("[a] party in interest may use Rule 2004 to determine the nature and extent of a bankruptcy estate and to ascertain whether wrongdoing has occurred.").

12. The Committee is a party in interest entitled to compel the document production from and an examination of the Witness. The Rule 2004 discovery sought by the Committee in this Application is consistent with Bankruptcy Rule 2004's above-stated purposes of allowing the Committee to obtain information necessary to determine whether claims beneficial to the Debtor's estate exist and whether to pursue such claims. *See In re Recoton Corp.*, 206 B.R. at 756. In this case, the examination of the Witness is essential to the Committee's investigation of the Debtor's financial affairs because, upon information and belief, the Witness has been identified as a manager of the Debtor, is an owner of Highview Management Inc., SentosaCare, Ventura Services, LLC, Graph Insurance Company A Risk Retention Group, LLC, Standard & Preferred Insurance Company, LLC, companies that provided Consulting and Insurance Services to the Debtor, an owner of Philipson Family, LLC, which owns a stake in Cold Spring Realty, and as such, has information on the financial affairs of the Debtor.

13. Moreover, the production of the requested documents is essential to the thorough investigation of the financial affairs of the Debtor, the existence of potential claims for relief against third parties, and to the proper, effective, and efficient administration of the Debtor's estate. The Committee believes that the Witness possesses information that will assist the Committee in the Committee's investigation and administration of the Debtor's estate.

14. The Committee respectfully requests that the Court grant the Committee the authority to issue and serve a subpoenas *ad testificandum* and/or subpoenas *duces tecum* under

Bankruptcy Rules 2004 and 9016 in order to compel production of Documents and attendance at the requested examination of the Witnesses. The Committee notes that the Witness will retain the right to move to quash any subpoena to such Witness on any appropriate grounds.

### **PROPOSED GENERAL PROCEDURES**

15. The Committee proposes that, unless otherwise agreed with the Witness, the production of documents or electronic files be made at either (i) the offices of Committee's counsel, Rimôn PC, 100 Jericho Quadrangle, Suite 300, Jericho, New York 11753; or (ii) through an electronic means as may be agreed upon by the parties. The Committee proposes to serve any subpoenas *duces tecum* at least fourteen (14) days prior to the due date for the production or inspection of any documents or electronic files. To the extent the Committee requires a deposition of any of the Witness, unless otherwise agreed with any Witness, where the deposition is within the geographic limits of a subpoena issued by the Court, the deposition will be at the offices of Committee's counsel, Rimôn, PC, 100 Jericho Quadrangle, Suite 300 Jericho, New York 11753, or by remote video conferencing on not less than fifteen (15) days' notice. When not within those geographic limits, the deposition will be at a location which complies with Civil Rule 45 on the geographic limits of a subpoena or by remote video conferencing. The Committee shall retain the exclusive right to determine whether an examination is taken in person or via remote video conferencing.

### **NO PRIOR REQUEST**

16. No previous request for the relief sought herein has been made by the Committee to this or any other Court.

**WHEREFORE**, the Committee respectfully requests that this Court enter an order, substantially in the form annexed hereto as **Exhibit A**: (i) authorizing the issuance and service of

subpoenas *duces tecum* to compel the production of the Documents from the Witness; (ii) authorizing the issuance and service of subpoenas *ad testificandum* for the examination of the Witness; (iii) where determined by the Committee, permitting the Committee to take the deposition by remote electronic means; and (iv) granting such other relief as is just and proper under the circumstances.

Dated:  Jericho, New York
        November 13, 2025

**RIMON P.C.**
Attorneys for the Official Committee of
Unsecured Creditors

By:  s/ Ronald J. Friedman
     Ronald J. Friedman
     Partner
     100 Jericho Quadrangle, Suite 300
     Jericho, New York 11753
     (516) 479-6300