*Letitia James*
Attorney General of the State of New York
Matthew C. DeSaro, Esq.
Christina Pinnola, Esq. (Pro Hac Vice)
Special Assistant Attorney General
Medicaid Fraud Control Unit
300 Motor Parkway
Hauppauge, New York 11788

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------X

In re:                                                    Chapter 11

      COLD SPRING ACQUISITION, LLC:                    Case No. 25-22002 (SHL)

              Debtor.

------------------------------------------------------------X

**THE NEW YORK STATE OFFICE OF THE ATTORNEY GENERAL'S OBJECTION TO THE APPROVAL OF THE DEBTOR'S AMENDED DISCLOSURE STATEMENT FOR ITS <u>CHAPTER 11 AMENDED PLAN OF LIQUIDATION</u>**

The New York State Office of the Attorney General ("OAG") hereby submits this Objection (the "Objection") to the Approval of the Debtor's Amended Disclosure Statement for the Chapter 11 Amended Plan of Liquidation for Cold Spring Acquisition, LLC (the "Disclosure Statement") (ECF Doc. No. 628). In support of this Objection, the OAG respectfully states the following:

<u>**PRELIMINARY STATEMENT**</u>

The OAG objects to the approval of the Debtor's Disclosure Statement because its current language governing the automatic stay, also included in the Plan, violates the requirements of 11 USC § 362(c)(2) and perverts the limited protections provided by the Bankruptcy Code. The

Debtor's language converts these protections into a perpetual blockade on the State's ability to exercise its police powers and adjudicate its long-delayed appeal of its claims asserting fraud and unjust enrichment of over $22 million in taxpayer funds against 22 non-debtor owners of the Debtor and its related parties named in the OAG's law enforcement Special Proceeding. Notably, in that case, the New York State Supreme Court, Nassau County held five of these non-debtor respondents liable for repeated fraud under N.Y. Executive Law § 63(12). As set forth in the OAG's Petition, the 21 non-debtor respondents participated in multiple fraud schemes involving orchestrated, collusive transactions with the Debtor that resulted in the conversion of many millions in Medicaid and Medicare funds. These funds should have been spent on care of its vulnerable nursing home residents, but were instead siphoned off by non-debtor respondents, and should now be returned to the Medicaid and Medicare programs through the state court judicial process.

## **BACKGROUND**

1.  On December 16, 2022, the New York State Office of the Attorney General commenced a Special Proceeding pursuant to New York State Executive Law § 63(12) against Cold Spring Hills Center for Nursing and Rehabilitation ("Cold Spring Hills") and twenty-seven other respondents including Cold Spring Acquisition, LLC (the "Debtor"), Index No. 611709/2022 (the "Special Proceeding).

2.  As contained in the Verified Petition (the "Petition") filed in the Special Proceeding, the OAG conducted an extensive investigation of Cold Spring Hills and found that the non-debtor respondents committed repeated and persistent fraud and illegality in their capacity as owners and operators of the nursing home and many of its related entities.

3. On March 15, 2024, Justice Lisa A. Cairo of the New York State Supreme Court, Nassau County ("State Court") issued a decision on the Petition: (1) holding the Debtor and its Managing Members, Avi Philipson and Joel Leifer, liable under N.Y. Executive Law § 63(12) for repeated illegality stemming from their failure to meet the standard of care for nursing home residents required by the New York Public Health Law and governing regulations; (2) finding that the Debtor and its Managing Members, Avi Philipson and Joel Leifer, failed to operate the nursing home with sufficient staff adequate to meet the residents' needs; and, (3) granting injunctive relief by installing an Independent Healthcare Monitor ("March 15, 2024 Decision and Order"). *See* Decision & Order on Motion, *People of the State of N.Y. v. Cold Spring Acquisition, LLC D/B/A Cold Spring Hills Nursing & Rehabilitation, et al.*, Index No. 611709/2022 (Sup. Ct. Nassau Cnty. 2024).

4. In the March 15, 2024 Decision and Order, the State Court also: (1) granted the OAG's Cause of Action against non-debtor respondents, Cold Spring Realty Acquisition, LLC, Philipson Family, LLC, Lifestar Family Holdings, LLC, ZBL Management, LLC, and Benjamin Landa, for $2,015,556 for repeated fraud under Executive Law § 63(12); (2) ordered non-debtor respondents, Philipson Family, LLC, Lifestar Family Holdings, LLC, ZBL Management, LLC, and Benjamin Landa, to each pay restitution of $503,889 to the Debtor; and (3) dismissed the OAG's remaining Causes of Action against the Debtor and the non-debtor respondents that sought to recover over $22 million in Medicaid and Medicare damages under N.Y. Executive Law § 63(12), Executive Law § 63-c, Social Services Law § 145-b, and unjust enrichment, which, as set forth in OAG's Petition in the Special Proceeding, were brought to stop multiple fraudulent schemes and collusive transactions orchestrated by non-debtor respondents. *Id.*

5.  Many of the parties to the Special Proceeding—including the OAG, the Debtor, and the respondent owners—filed appeals (the "State Appeals") to the New York State Supreme Court, Appellate Division, Second Judicial Department ("Appellate Court"), which were scheduled to be perfected on or before January 8, 2025.  The OAG's pending appeal seeks to modify the March 15, 2024 Decision and Order by: (1) ordering repayment of the $2,015,556 in restitution to Medicaid and Medicare instead of to the Debtor, and, (2) reversing the dismissal of the causes of action for fraud and unjust enrichment that sought repayment to Medicaid and Medicare of an additional $20 million that was transferred by the Debtor to many of the non-debtor respondents.

6.  Beginning on January 2, 2025, Debtor filed its voluntary petition for relief pursuant to 11 USC §§ 1101 et seq., *Chapter 11 Voluntary Petition for Non-Individual*, ECF No. 1, removed the Special Proceeding to this Court, Adv. Proc. 25-07001-SHL, and requested of the Appellate Court that it stay the State Appeals in their entirety, as opposed to confining it to the Debtor alone, which it did.

7.  On January 27, 2025, the OAG moved this Court to remand the Special Proceeding to the State Court and lift the automatic stay on the State Appeals. *N.Y.S. Att'y General's Mot. for Remand of the N.Y.S. Special Proceeding to the N.Y.S. Sup. Ct., Lifting the Automatic Stay as it Pertains to the N.Y.S. Special Proceeding & Appeals, & Related Relief*, Adv. Proc. 25-07001-SHL, ECF No. 8.

8.  After a hearing, the Court issued orders on May 14, 2025, later clarified on May 23, 2025, modifying the automatic stay, insofar as the stay was lifted as to all parties except the Debtor, and remanding the Special Proceeding to the State Court. Adv. Proc. 25-07001-SHL, ECF Nos. 22-24.

9.    On June 11, 2025, the OAG filed a motion with the Appeals Court to partially lift the stay on the State Appeals, in accordance with the orders of this Court (the "Appeals Motion"). As of the filing of this Objection, the Appeals Motion remains pending.

10.   In response to the Appeals Motion, 21 of the non-debtor respondents in the Special Proceeding filed objections asserting that the automatic stay of the claims against the Debtor should prevent OAG's claims from proceeding against the non-debtor respondents.

11.   On September 25, 2025, the Debtor filed Notice of Hearing to Consider Approval of Debtor's Disclosure Statement. ECF No. 398.

12.   On October 14, 2025, the Debtor filed its Chapter 11 Amended Plan of Liquidation for Cold Spring Acquisition, *LLC*, ECF No. 413, and Disclosure Statement, ECF No. 414.

13.   On February 7, 2026, the Debtor filed an Amended Chapter 11 Plan of Liquidation for Cold Spring Acquisition, LLC, ECF Doc. No. 617, and an Amended Disclosure Statement for Chapter 11 Plan of Liquidation for Cold Spring Acquisition, LLC, ECF No. 618.

14.   On February 9, 2026, the Debtor filed a Second (Corrected) Amended Chapter 11 Plan of Liquidation for Cold Spring Acquisition, LLC, ECF No. 627, and an Amended Disclosure Statement (Corrected) for Chapter 11 Plan of Liquidation for Cold Spring Acquisition, LLC, ECF No. 628.

15.   On March 4, 2025, the Debtor filed a Notice of Adjournment of Hearing, indicating that any objection or response to the Disclosure Statement must be filed no later than April 28, 2026, at 4 p.m. ECF No. 656.

16.   Since the beginning of March 2026, the OAG has been in contact with counsel to the Debtor in the hopes of reaching consensus on updated language in the Disclosure Statement

and Plan. The OAG shared all its proposed edits with the Debtor, who agreed to every proposal except for the language regarding the automatic stay. *See* Exhibits A, B.[1]

**OBJECTION**

A. **The OAG Objects to the Language Contained in the Amended Disclosure Statement and Amended Plan of Liquidation which Illegally Calls for the Automatic Stay to Remain in Effect in Perpetuity for No Legitimate Reason.**

17. In balancing the competing interests of a Debtor and its creditors, 11 USC § 362(c)(2) states that the automatic stay imposed in voluntary bankruptcy cases, "continues until the *earliest* of—the time the case is closed; the time the case is dismissed; or if the case is a case under … [Chapter 11 of the Bankruptcy Code] … the time a discharge is granted or denied…." (emphasis added).

18. Reasonably, 11 USC § 362(c)(2) explicitly contemplates a finite end of the stay protection provided to debtors. "The automatic stay … gives the debtor a breathing spell of his creditors." *In re Wythe Berry Fee Owner LLC*, 662 B.R. 36, 44 (Bankr. S.D.N.Y. 2024) (citing *St. Paul Fire & Marine Ins. Co. v. Labuzan*, 579 F.3d 533, 540 (5th Cir. 2009) (quoting legislative history)). The automatic stay was meant to provide temporary relief to the Debtor, not to forever immunize the Debtor, and the persons who continue to control it, from having the State Court adjudicate to judgment the State's claims brought pursuant to its police powers against persons who have illegally taken from a nursing home

---

[1] OAG has included with the Objection the proposed edits to the Disclosure Statement and Plan that it sent to Debtor's Counsel (Exhibit A) and the relevant email correspondence between OAG and Debtor's counsel indicating agreement on all OAG's proposed edits except for the language related to the automatic stay (Exhibit B). Notably, because the most recent iteration of the Disclosure Statement and Plan filed on the docket preceded these conversations, they do not include the OAG's edits. This Objection relies on Debtor's agreement, insofar as it confines the Objection to the language regarding the stay. The OAG reserves its right to file a subsequent objection, however, if the already agreed upon edits are absent from future filings of the Disclosure Statement and Plan by the Debtor.

Medicaid and Medicare funds that the home received to provide care for vulnerable residents, yet instead transferred through fraudulent, collusive transactions to related parties and their owners.

19.     Nonetheless, while 21 non-debtor respondents' filed objections to the State Court's adjudication of the OAG's appeal in the Special Proceeding remain pending based on grounds including the bankruptcy court's stay of claims against the Debtor, the Debtor has included the following language in all iterations of its proposed Plans and Disclosure Statements:

> ***Automatic Stay and Bankruptcy Injunction Continues.***  All injunctions or stays arising under or entered during this Chapter 11 Case under section 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect.  For the avoidance of doubt, the automatic stay shall remain in full force and effect to preclude any action by (a) New York State Attorney General's Office against the Debtor, including without limitation the prosecution of the NYAG Action and (b) Holders of Personal Injury Claims. (Section IV (H) (6).)

*See*, Second (Corrected) Amended Chapter 11 Plan of Liquidation for Cold Spring Acquisition, LLC, ECF No. 627, and an Amended Disclosure Statement (Corrected) for Chapter 11 Plan of Liquidation for Cold Spring Acquisition, LLC, ECF No. 628.

20.     The Debtor's language provides no termination date.  To the contrary, it explicitly mentions the Special Proceeding and states that any stay in existence on the Confirmation Date would "remain in full force and effect."

21.     Accordingly, the OAG proposed the addition of the following language for the Disclosure Statements and Plan, which the Debtor refused:

> ***Automatic Stay and Bankruptcy Injunction Continues.*** All injunctions or stays arising under or entered during this Chapter 11 Case under section 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall terminate upon the earlier of: *(1) the Confirmation Date; (2) approval of the sale of the skilled nursing facility f/k/a Cold Spring*

*Hills Center for Nursing and Rehabilitation by the New York State Public Health and Health Planning Council; or (3) by further order of this Court.*"
(emphasis added)

*See* Exhibit A.

22.    The recent regulatory approval of the sale by the New York State Public Health and Health Planning Council (PHHPC) and DOH means that the last step in the transfer of the nursing home operations is the closing of the transaction between the Debtor and the Receiver. The Debtor and the Receiver have substantial control over the timing of the closing of this transaction. The longer the delay of the closing, the greater the benefit to the non-debtor respondents to the Special Proceeding because justice delayed in the State Court is justice denied. Moreover, only for as long as the closing does not occur, the Debtor can argue against conversion of its Chapter 11 liquidation into a Chapter 7 one by using the nursing home residents as human shields to protect the financial interests of non-debtor respondents.[2] In light of this, the OAG now proposes the addition of the following language for the Disclosure Statements and Plan:

> ***Automatic Stay and Bankruptcy Injunction Continues.*** All injunctions or stays arising under or entered during this Chapter 11 Case under section 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall terminate upon the earlier of: *(1) the Confirmation Date; (2) the closing of the sale of the skilled nursing facility f/k/a Cold Spring Hills Center for Nursing and Rehabilitation; or (3) by further order of this Court.*" (emphasis added)

23.    There is no legitimate reason for the stay to remain in effect in perpetuity. The Debtor has already made use of its "breathing spell," as it has filed proposed Plans and Disclosure

---

[2] In their Objection to Conversion, the Debtor explains that "[u]ntil closing of the sale, the Receiver is operating the Facility, on behalf of the Debtor." *See* Debtor's Objection to App. for Order Converting Ch. 11 Case to a Case Under Ch. 7 of the Bankr. Code & Granting Related Relief (April 7, 2026) [ECF No. 679] ¶ 14. In fact, "the Receiver bills using the Debtor's provider numbers and all collections are received into the Debtor's bank account." *Id.* ¶ 10. Therefore, they argue, conversion would require a cessation of operations of the facility which "would undoubtedly result

Statements, is in the midst of attempting to claw back funds to pay creditors, and has found a Receiver to operate Cold Spring Hills who has received regulatory approval from PHHPC and DOH to become the new owner of the facility. The Debtor is strategically seeking to improperly use the automatic stay to protect the financial interests of the non-debtor respondents in the State Appeal. This is not surprising because the Debtor is owned and controlled by a number of the non-debtor respondents in the State Appeal. So long as the stay remains in effect, the non-debtor respondents in the State Appeals will continue to evade justice as the State Appeals will remain in limbo, undecided, and unable to be reduced to judgement by the Appellate Court. As the bankruptcy case comes to close, so too should the automatic stay on the State Appeals.

24. Lastly, the OAG expects that, in line with numerous Medicaid fraud cases brought in exercise of the state's police powers for many decades, the OAG will prevail in its State Court appeal in the Special Proceeding, both in the amount of restitution sought for Medicaid and Medicare, and in the return of the converted funds to the Medicaid and Medicare programs. For the sake of clarity, if the OAG prevails on the State Appeals through a court decision finding that any of the non-debtor respondents and the Debtor are liable on the OAG's claims seeking restitution, the OAG will endeavor to enforce the judgment for such a liability against the non-debtor respondents rather than the Debtor.

---

in delays and disruptions." *Id.* ¶ 14. The group most likely to suffer negative effects from these potential delays and disruptions are the residents of Cold Spring Hills, now Woodbury Heights. The Debtor has perversely positioned itself as essential to the health and wellbeing of the same group they harmed through their fraudulent, collusive transactions to related parties and their owners.

## **RESERVATION OF RIGHTS**

The OAG reserves its right to supplement this Objection at or prior to the hearing on the

Disclosure Statement.

## **CONCLUSION**

For the foregoing reasons, the OAG objects to the approval of the Debtor's Amended

Disclosure Statement for the Chapter 11 Amended Plan of Liquidation for Cold Spring

Acquisition, LLC:

Dated: April 28, 2026
New York, New York

NEW YORK STATE OFFICE OF THE ATTORNEY GENERAL

*/s/ Matthew C. DeSaro*
Matthew C. DeSaro
Christina Pinnola
NEW YORK STATE OFFICE OF THE ATTORNEY GENERAL
28 Liberty Street
New York, New York 10005
Tel: (212) 417-5300.
Facsimile: (212) 417-5335
Email: matthew.desaro@ag.ny.gov
Email: christina.pinnola@ag.ny.gov